Good morning, Your Honors. Robert Romero and Sean Culbertson on behalf of Appellants Christopher Thomas Johns and the Law Firms of Johns and Hill. Your Honor, I stand before this panel understanding that the Federal Arbitration Act requires the court to give deference to the trial court with respect to arbitration courts. However, this case is much different. The Federal Arbitration Act also specifies that the court can and should set aside arbitration awards where the arbitrator exceeds their powers, not by merely misinterpreting the law, but when the award is completely irrational and exhibits a manifest disregard of the law. We believe that occurred here. This is a legal malpractice case. This is a case where my clients have been felt liable by the arbitrator for legal malpractice. We believe in addition to the manifest disregard of the law, the district court erred, but it failed to consider the policy which was also implicated by this court. Your Honors, the underlying case involved a partition action. There was a family dispute concerning the value of the partition of the lands. At issue in the underlying case was the value of mineral rights, and in that case, my client's client took the position under oath that the mineral rights had zero value or nominal value. That was the predicate of the entire case. The case went forward through the court's appeal where that factual predicate was never in dispute. Fast forward to the arbitration in the legal malpractice case. In the legal malpractice case, my client's client's position changed in the diametrically opposed position. In the malpractice case, they took the position that the mineral rights had value, and based on that, the arbitrator awarded damages because in the legal malpractice case, the prima facie case requires standard of care violations and damages which are approximately caused. So in this case, you have an anomaly that's tarantula. You have the case going forward factually all the way to the California Court of Appeals that the mineral rights have zero value. And in the arbitration, they're saying the exact opposite, that they have value. Now, the reason that this case is so different, and the court has directed the parties to look at the American Postal Workers Union case where Judge Sporzer turned around in arbitration court because it was based on an illegal act. In the American Postal Workers case, the arbitrator essentially took the position or concluded that even though this federal postal worker went on strike, that he was not going to terminate the employee. He was going to reinstate him, but Judge Sporzer took a look at that and said, under the arbitration act, we're not going to sanction illegal activity. We're not going to let an arbitrator misinterpret the law to that degree. I see parallels in this case because what's going on in here is perjury, or at the very least, lying under oath. Because as I said earlier, the underlying case, the partition action, went forward. Let's talk about that. Because in American Postal Workers, that was clearly, you know, it was just determined that there was a clear violation of a specific law. Here, we have perjury, which relies on the interpretation here of an evaluation by the arbitrator when there's such that. It's not as distinct example, and so I'm just trying to figure out why you think this is so clear-cut. Because it looks like the magistrate specifically said she could not say that he committed perjury. She made reference that it seems like it was confusing for him and, you know, there was a lot being thrown at him, which seems to indicate that she doesn't think that he intentionally and if at all, you know, misrepresented anything. You're right that the board alludes to that. However, the record is very specific. The record where? The record in the partition action and also the record in the arbitration of the amount practice case. Because in the partition action, Mr. DeMartini justified two very simple questions. This is not a record where, contrary to the comments that you made that the arbitrator found, this is not a record where we're relying on multiple questions and answers. These are very specific questions that are in the record. The question that was asked, for example, in the partition action by my client, Mr. DeMartini, was, do you agree with the Cartwright report which says that communal rights have nominal value? Yes, that was the question. Subsequently, in the trial, in the practice arbitration, he was, Mr. DeMartini was asked, that was her testimony. It didn't have context. He said, now there's a lie. So this is a case where the actual declarant is saying, I committed perjury. I lied. The FAA, there's a case under the FAA where fraud, partition fraud, that can be caused with any arbitration report. But I'm not aware of a wide circuit or any other case, particularly where there's dispute on credibility, which implies some perjury in the best interest of the extended cohort. I mean, I see that as an unlegal principle here. You're trying to perjure a real man. Well, we believe that the case that the court pointed is that if you're falsifying your state's case, it's a strong parallel because in that case you're talking about a illegal act. In the Blaine case, the other case that you decided, it's axiomatic that when you take an oath, you promise to tell the truth. That's a fundamental axiom of our system. I'm not clear which was the truth. I mean, the arbitrator was in the best position to decide that. And you're saying because somebody had clearly lied, that in effect, they're totally, completely telling the truth. Maybe they're only telling the lie. That's a good point. That's an excellent question. And it raises another point that's also in this record. At the arbitration of a legal malpractice case, when the lawyer's point client exposed this testimony and where Mr. DiMartini said this was a lie, what happened next was extremely important, Your Honor. What happened next was Mr. DiMartini took the Fifth Amendment and taking the Fifth Amendment, which is his right to do, the arbitrator failed to do the following. In a civil case, in the Fremont immunity case, for example, in which site, in those instances where the status was fifth, thereby precluding us from going into the intent, precluding us from figuring out what is really going on here, they're just changing their story to facilitate a malpractice case, which we believe was happening. We were prevented from doing that. So our contention is, and this is something Mr. Court did not address, in those instances where a civil litigant in California teased the Fifth Amendment, he discerningly claimed or he dismissed it because the Fifth Amendment cannot be used in this shield sort of fashion under the Fremont immunity case that was done here. With respect to the second reason, we believe that it is spoken of. One of the things that people like to agree to arbitration because it's supposed to be cheaper and it's quicker and so forth and so on, but the parties who agree to arbitration, they give up a lot. And there's sometimes buyer's remorse. Now, if you have arguments to a judge or a jury, setting a record, challenge or appeal and say it was established or the Fifth Amendment was asserted and there's some essential rights there, and we agree to arbitration, that's cool, that's all good. You're already agreeing with those fundamental principles, but as I said at the outset, it's not a limit. This court is not without power to remedy the situation and it demonstrates a manifest disregard of law. Because if that wasn't the case, an American postal worker, a judge or a jury wouldn't have been able to do what you did and did properly. The second aspect to the reason why we believe the arbitration court should be vacated was the statute of limitations. In California, superlegal malpractice, it's like it has to sue within one year whether they knew that the lawyer did something wrong. Not one year whether they knew that they had a legal, cognitive school claim for legal malpractice, but did someone do something wrong. And in this case, the DRT needs to fire my clients upon getting the verdict in the underlying case. They represented themselves and they did something which only sophisticated litigants do. They said my client had told an agreement, which is in the record. And in that told agreement, they say we're not going to sue you but here are the various acts and omissions that we accuse you of doing. My clients didn't sign that. The dates are in the record. What the DRTs then did was that they sued a year after, well within a year after the statute began to run. When the arbitrator looked at this issue, she acknowledged that 40.6 of the California Codicil Procedure section has a one-year statute of limitations. So she knew what the law was. But the reason why this is more than just an error of law, which isn't sufficient, she did not apply the indisputed facts to that statute, which are clear here. Judge Spiro, in his order, which we're appealing from specifics of states, that the statute of limitations has been and had expired. He concludes that it was just an error of law, but that is irreconcilable with the state of the record, which shows, for example. Well, the arbitrator said she had not seen evidence that clearly established as to whether the DRTs knew or reasonably should have known defendants' actions or omissions that could have arisen from outright disclaims. We believe that that was a disregard of the law because she acknowledged 340.6 and disregarded, for example, the tolling agreement that was sent to my clients on June 22, 2012. The fact that the DRTs sued in the Red County Superior Court case five days thereafter, that was subsequently disassociated into the arbitration. Disregarded the fact that when the DRTs finally filed a complete in the arbitration, a legal malpractice complaint in the arbitration, it was well after the year that they sent the tolling agreement. When you look at the tolling agreement, the very factual predicate that the arbitrator relied upon was the fact that somehow Mr. DiMartini was not properly prepared for his deposition. That was one of the many enumerated acts or errors that was identified well back in June 22, 2012, and this is a case bear in mind where the clients immediately fired my client on June 30, 2011. So we believe when you look at this case for two reasons. You've got the admitted lying under oath. You have a situation where my client is not participated because of the Fifth Amendment invocation or challenge you have. And then second and independently, you have a statute that clearly applies, a record that is undisputed, and in those instances, we submit that the support is not powerless. We submit that it doesn't run afoul of the given meaning and effect of the federal arbitration act, which Your Honor notes, but it's not unlimited. And in a case like this where you have a legal malpractice judgment entered against my client based on two diametrically opposed factual predicates that the very claimant admits was lying, and then you handcuff my clients and say, you can't go into that, that does not, an arbitration award with those facts need not be given meaning and effect. Yes, Your Honor. I have a couple questions on the confirmation. I'm trying to understand your argument that the district court's ruling on confirmation and promotion would result in a waste, I think you call a waste of judicial resources. It seems to be a summary act. Can you clarify your position on that point? The point isn't the judicial resources, Your Honor. I'm sorry. Sir, that's what you said, and there are a lot of excuses for that. But you're saying that the district court erred with respect to the confirmation. Yes, we believe, for the reasons I've identified, we believe that the district court had before it a record that demonstrated both, and Mr. Martini did take. But it had already denied, I'm talking about, it had already denied your motion to vacate, and you still wanted him to hold off on the confirmation. We wanted the court to vacate the important, defining thing about practice. Let me ask you on your challenge regarding the pre-judgment interest. Sure. Because I guess I want to know if you agree or not that the FAA seems to provide the exclusive grounds to vacate or modify an arbitration accord. We believe under 59E that the court has the power to correct the accord. Well, what do we do with the FAA provision that seems to say that they have the exclusive grounds? Now, this is the struggle here with this issue, obviously, whether 59E drops the FAA provision or the FAA provision drops 59E, but nonetheless, why did you not address your challenge to the arbitrator's grant of pre-judgment interest in your motion to vacate the award, perhaps as an alternative argument? You are on notice, so I'm trying to figure out. It seems like you were on notice that pre-judgment interest was contrary to California law as soon as the award was issued. We elected and corrected at the time we did correct it. You elected, you knew about it, and you waited. We knew that we didn't get grounds for 59E, and we didn't make that motion at the time we did. And we addressed that in our race. So you knew it would lose, and so you would... I'm not trying to understand. And the motion to vacate was purposely aimed at the substantive issues that I've been discussing with you this morning. I believe that the motion to vacate is well taken, and hence the decision we elected to proceed with. Well, it seems like our court has bested that Rule 59E motions may not be used to raise arguments for the first time that they could have reasonably been made earlier in the litigation. So I'm just struggling as to how we can... We are not to conclude that you waited too long to challenge the pre-judgment interest in an arbitration court. We elected to do the 59E opinion in this branch, and then please consider the sections 10 and 11 of the FAA, which allow for motions to vacate or modify it. Yes, section 10 is what we moved under, Your Honor. Well, you moved under 59E. No, for the interest... The interest. Yeah. Are you sure there's jurisdiction under 59E? Because when you did move under section 10, for the interest of jurisdiction for 59E, the court did have the right to make that ministerial correction to the judgment. Is there a specific case on that that you cited? If you do cite it, in my republic, it's a right. Thank you. One other unrelated question. Are you unclear of something that's not evident? To the Chief of the Threat Group. You originally instituted the ill-arbitration based on the fee agreement. Correct. The clients opposed it, and then the party stipulated it's a non-binding arbitration. So what was the effect of the non-binding part of the arbitration in the order that the district court entered? What was the effect of the non-binding in the district court? I mean, basically, you know, everybody's arguing this is binding arbitration, but the district court granted the party stipulation to submit a non-binding arbitration. Am I missing something? I believe so, Your Honor. We made the decision that each of us committing to adhere to the arbitration award. So why is it binding in the first place since it's a non-binding arbitration? It's not an issue that's unreal, it's just that there's probably an easy answer to it. Okay, thank you. Good morning, Your Honors. May it please the Court, Catherine Davis, on behalf of Abilities and Cross-Balance, I'd like to reserve two minutes for rebuttal on the possible appeal. Your Honor, this Court has stated that when assessing whether an award violates public policy, the entire inquiry must proceed in light of the facts that the arbitrator found. Here, taking the facts that the arbitrator found, the award itself does not violate public policy. The elements of perjury undoubtedly present questions of fact which must be determined by the arbitrator in the first instance. Let's talk about that a little bit. When did the DRTs become aware that the defendants had adequately prepared Michael for his deposition or failed to introduce evidence at trial relating to the value of mineral rights? Well, Your Honor, it's not clear in the record. When they became aware that those facts were wrongful, I think the record shows that the DRTs were aware of what transpired generally at trial. So you think they were aware of it because it seems like they would have been aware of this conduct at least before the DRTs terminated the defendant's services on June 29, 2011. Well, it's not in the record. That fact isn't in the record. I think that the inference could be drawn either way. But the point under peregrine is when does the plaintiff become aware that the conduct is wrongful? I mean, the case is very clear that it would be wrongful. How do you reconcile American principles, I think, with feminism? Can you talk to me about that? Yes, Your Honor. It seems that from that case, reading that case, the statute of limitations is triggered by the knowledge of the acts or omissions constituting the legal malpractice, not knowledge that the acts or omissions were wrongful, which is what I think you are about to argue. Yes, Your Honor. Our view is that under the peregrine case, the inquiry focuses on when the plaintiff becomes aware that the actions were wrongful, not the underlying conduct, otherwise it would be difficult or actually impossible to reconcile the two clauses in 340.6. With respect to American Post, we'll speak to that, Your Honor. Yes, in that case, our view is that the case is entirely distinguishable from this case. In that case, it was undisputed, in fact, conceded, that Murphy had engaged in a strike in violation of federal law barring reinstatement, and it was undisputed that the enforcement of the award itself would compel the Postal Service to violate federal law because it was uncontested that Murphy had engaged in a strike in violation of law, and it was uncontested that enforcing the law itself, which is the critical inquiry under Steadmotors, would violate the law. The Court vacated the award here. There are no uncontested, legally dispositive acts that would force this award itself to violate the law. Steadmotors makes very clear that the Court is not to look at past conduct or the behavior of the party in question. The Court is to determine whether the award itself compels the party to violate the law or to perform, as Steadmotors calls it, manifestly, illegal acts. I would add, in that case, the Court was very clear. The American Postal itself said its arbitration awards cannot be set aside for ruinous findings, offense, or misinterpretations of law and duty. This Court clarified that American Postal does not alter the rule. The Courts do not re-examine the ultimate weight of the evidence in Steadmotors. The court, the Enron Court, of course, cited American Postal for two fairly unremarkable propositions. One, that the Court is barred from disregarding the arbitrator's factual determinations, let alone supplementing them with its own, or from correcting an arbitrator's erroneous understanding of the law. And second, in stating that the circuit has adopted a very narrow view of the public policy exception, the Enron Court cited American Postal for the proposition that an arbitration award will not be forced to do but force the party to perform a manifestly illegal act. So the inquiry must focus on the award itself, not the conduct or the behavior of the client in their past. So are you saying... Excuse me for a second. So, hypothetically, let's say that an arbitrator said, yes, this person committed perjury, but I'm going to award damages anyway. Do you think that falls within the rule or not? No, I don't. And the reason is the award itself would not... I'm sorry, I actually do not think it falls under American Postal because that would be a factual finding. Perjury is a factual finding. I know. But there's the finding of perjury, and the arbitrator says, I don't care about that. I'm going to award damages anyway. Well, that's an interesting question. I think that, understand voters, the rule is we look at the award itself, and does it violate the law, or does it compel the violation of the law, not what is the underlying conduct and lawful? That's a rather radical whole in a sense. I mean, that's not what we have here, because you can test the perjury occurred, and so that's a fair stretch of how we can confirm an arbitrator's award, saying that there's no basis for the award whatsoever. Or it's based on illegal conduct, illegal testimony. Well, I think my view is it's just not, that's not the question before the court, and I think that perhaps that could be the case. I mean, certainly that could be the case, but I don't think American Postal stands for that proposition. Certainly, if there's a complete intentional disregard of the law, if there are uncontested, I think as the former referred to it, co-t, legally dispositive acts, that would be a different situation. Well, if we could include it, I'm sorry if I'm trying to play something. This is American Postal, which is very interesting. If we conclude that the Martinez's did not honestly dispute that they must have been aware of the defendant's acts constituting legal malpractice more than a year before they brought their malpractice claims, does American Postal Workers require us to make an arbitration award based on manifest disregard for the law? No, Your Honor, because it's undisputed here that the arbitrator stated the law correctly and applied it to the facts. That would be, excuse me, that would be a challenge to the application of the facts, perhaps in disregard of the evidence. I think the court, after American Postal, has made clear again in the co-t case that it certainly doesn't recognize that American Postal Workers stands for the proposition that an arbitrator's failure to recognize undisputed, legally dispositive facts may properly be deemed a manifest disregard for the law. And here, I don't think you've contested that your clients filed what they did, challenging the representation and the claim to claiming it was malpractice and listed the reasons why they fought that. Are you? Well, they did, what? They did say that all of these things. Right. Does that reflect the acknowledgment sufficient to say that these, you know, that what they did was wrong with their employers, the jobs they did was wrongful, and that would have started the clock? No, I don't think so, Your Honor. I don't think that the, I think the arbitrator was correct that the mere fact that one sends a probe for plaintiffs and sends a list of potential claims, that that necessarily establishes that they understood or knew the requisite facts constituting the wrongful dismissing. I do believe that Peregrine makes clear that it's not the underlying act. It does want to know that that was wrongful and the Peregrine case was undisputed and uncontested, that the plaintiffs knew that they had been damaged in 2001, for example, and that public information, including press reports and court filing has demonstrated that Shepard Pollock had engaged in wrongful acts. So that was a plain injury and breach with knowledge, and that would really undermine the whole process of the discovery roll, and I think the arbitrator was perfectly within her discretion to find it. At most, it indicated that they had begun to think about the claims that they had, but there was nothing that would establish that they knew that they had been, that there had been wrongful conduct, and even if this were a decree that disagrees with it, that would be another question. That would be an error of fact or an error of law or an error of simplification of the law. The Circuit of Opinion and Stead voters made very clear that the public policy of Peregrine is that the statute of limitations is triggered by the client's discovery of facts constituting wrongful act or omission, not by his discovery that such acts are wrongful. I believe that the case for the proposition, the ad case was uncontested, that they, again, the plaintiffs knew that they had been damaged and they knew about the wrongful acts, and I believe their argument was they didn't realize that Shepard Mullen owed them a duty, and that was the prong of the malpractice cause of action, that they didn't know. And the court said that the fact that you didn't know that he owed a duty is not dispositive. You knew about the wrongful acts. I'm struggling because that's what Peregrine, what I'm seeing here, and despite the arbitrator's correct presentation of the ad note, they look a lot and seemingly, it seems to be an undisputed fact surrounding when the DeMartinis would or should have become aware of these underlying acts and omissions that gave rise to the malpractice claims. The arbitrator here failed to conclude that the DeMartinis were time barred, and the arbitrator just doesn't seem to offer any substitute or explanation of her decision beyond stating, I still have not seen evidence that the DeMartinis knew or reasonably should have known the subject of the facts, but she doesn't explain what relevant facts concerning the defense representation that the Martinis might have been aware of on June 29, 2011. So, I'm just trying to figure out, this is a really difficult question here. In light of your briefie and the American Post workers, if I wanted to give you an opportunity, because it looks like in your reply brief, you didn't really address American Post workers. Oh, I'm sorry, Your Honor, that was cited in one sentence, but apparently it wasn't addressed in substance in the respondent's brief. Your Honor, thank you. I mean, that balance is great, but thank you for giving me the opportunity again. Our position is that that case is very clear, that if there are uncontested, legally dispositive facts that would cause the award itself to violate the law, there's a very fine line between that holding and approval that would allow the court to revisit every erroneous misapplication of the law or misconstruction of the evidence, or the failure to apply the law in the right way. Thank you, Sarah. And Steph Motors' 12-month decision to make very clear that the court is not permitted to do that. I mean, if every time an arbitrator makes a mistake on the law or makes a mistake on the evidence, this court or the district court is going to vacate the award if it defeats the entire purpose of the FAA. So American Post must be construed very narrowly. Steph Motors construed it narrowly. Kuti construed it narrowly. It was a very unique situation. And I would also point out that the arbitrator did explain her decision. It may be that this court decided it was a mistake. But she referenced, she stated the law correctly. She referenced her summary judgment ruling in which she set out in length in a full-page, single-space analysis of the summary judgment ruling why the tolling agreement didn't trigger the statute. And in her view, it did not necessarily establish that they knew the requisite facts. It's uncontested that she cited the law correctly. There's no evidence that she intentionally construed the law in a way to render it inapplicable as we had in the context of the comedy club case. And she expressly noted in the final award also that Johns had made a scanned argument concerning the summary judgment in its book, their closing brief, and that they had failed to proffer additional evidence. And she expressly rejected the argument that the breaches alone constitute grounds for notice. Again, that may be a mistake. But that's not a manifest disregard of the law. That is not construing Peregrine in a way to make it inapplicable. It's a very high standard to show that an arbitrator intentionally disregarded the law for the purpose of reaching a result that was contrary to the law or which would cause this. It's called a violation of law. It's an extremely high standard. So I can ask you about the former judgment. It seems that the Supreme Court's original judgment entering this case conflicted with the arbitration award. The arbitration award order that is to pay the $158,000 plus interest at the California Statutory Prejudgment Interest Rate from June 30, 2011, and then to reimburse the DMR-TVC $19,100 for arbitration fees and costs. So is the $19,100 subject to prejudgment interest? I don't think so, Your Honor. So did the district court err to the extent that it originally entered judgment in the amount of $170,000 plus prejudgment interest? I'm trying to figure that out. I think that it should. I think that the costs should not have been included. That should have been subject to a motion to make. To the extent it wasn't, the FAA, as Your Honor pointed out, mandates that an arbitration award that has not been vacated must be confirmed and that judgment must be entered upon that confirmation. There's no provision that would allow for it. Well, they claim the 59E, and so why is 59E not from the FAA? Well, I believe that the Supreme Court and, basically, the FAA provides the exclusive grounds for vacating an award, and then absent of that order vacating the award within three months, that the award must be confirmed and judgment must be entered, so necessarily, Rule 59 can't be reconciled with that. There is a case that Your Honor referenced, the Chiron case versus Ortho Diagnostics, I believe it's called, which distinguished between a judgment arising from a judicial proceeding and one arising from a confirmation. In the first instance, the court is correcting its own mistakes, and when you're one, that court is confirming an award. There's no review of the merits, so there's no provision for a Rule 59E to even apply. With permission, may I address a statement that was made in the opening argument? Oh, sure. Okay, so there was no stipulation here that Michael D. Martini ever admitted on the record that the mineral rights were worth zero. There was no stipulation in this record that the mineral rights were worth zero. He was not asked whether he agreed with the Cartwright letter, which itself did not stipulate zero. It stipulated a nominal value as the whole reason we're here. That distinction, so that was a mistake. It's not the Cartwright letter. He was asked, do you agree with the proposed plan of partitioning and co-owning the real properties? He was asked one question, and he was instructed by his counsel that he must agree with the plan, and he did, and the record shows that Mr. Johns and Counselor James Martini had met the night before trial and decided that Michael would have to agree to the plan. And despite his reservations about co-owning certain properties, there was never a discussion about the values. The plan itself doesn't stipulate to any values of the mineral rights, and the record shows that he was instructed by counsel that he had to agree with the plan. He was asked one question, do you agree with the proposed partition plan? And the arbitrator found that she questioned him directly on his statement concerning why he said he agreed with the plan and then why he later said that he didn't agree with the plan. And he has said that she said because what counsel instructed him that he must agree, and she accepted his explanation that he was doing what he was being told by counsel and that she would weigh the decision when she made, that she would weigh his statement and the implication of the Fifth Amendment when she made her decision, what she did. She also expressed and rejected any contention that Michael lied in his deposition. All these arguments were made in the closing of briefs, which were considered by the arbitrator and rejected necessarily to the extent she found that all the problems caused at deposition, including the defects in Michael's testimony, were caused by Mr. John's failure to prepare him and also the fact that he had expressed the instruction of Michael on the record not to answer the question, not to render him in. And that's in ER 139 and 140. And I would submit that the arbitrator made findings that they were supported by the record. Even Judge Spiro found that there's nothing there that would indicate that at the time any of these statements was made, that there was a, that these were misrepresentations of fact, that they were made willfully with the intent to deceive the court. They were both made on the instruction of counsel. Perjury is an extremely high standard. And the arbitrator and the district court both found that there was no perjury here. Counsel, can you just say how nonbinding arbitration became transformed into binding arbitration? Yes, Your Honor. It doesn't appear that the nonbinding arbitration occurred. There was a stipulation that the Demartini's filed their state court complaint in pro per, and that Johns were moved into federal court. And there was a stipulation that the parties would engage in nonbinding arbitration as signed and maybe in the record. And then Johns moved to dismiss and compel binding arbitration, which Judge Spiro granted. And so when the Demartini's attempted to reopen the case and enforce the nonbinding arbitration that everyone agreed to, Judge Spiro said, no, this case has already been dismissed. It's been sent to binding arbitration. So the nonbinding arbitration, it appears, never happened. It's an odd thing because with the recitation of facts, both the brief stops at the stipulation of nonbinding arbitration, and then it post jumps into the arbitration. I'll look at the record, but if this effect was nonbinding, does it change things? Well, our view, at least with respect to if this court, well, it's a very interesting question. But I would say that if the court decides to vacate the award on manifest disregard, on the ground of manifest disregard, then there should be agreement with the arbitrator, which this court has the power to do, to determine whether equitable tolling would apply or whether there was a commencement of the action within the meaning of the statute. Here, it's undisputed that the complaint and the removal and the arbitration all happened within the statutory limit. Even if you take an austere view of the statute and the arbitrator expressed a decline in rule on those facts, you should know the statute wasn't triggered. But the district court made findings. We would submit that the district court permitted to make additional findings contrary to the arbitrator's initiative. For some reason, this court vacates. We would ask, please, to remand to the arbitrator so she can decide was this filing and the removal and the triggering of non-binding arbitration that commenced this action for purposes of the statute's limitations, which would be an alternative route to save the divergencies. Thank you. Thank you. Thank you. The question was asked of counsel concerning the American Postal Workers case as it relates to the statute of limitations. When I read the court's order pointing us to that decision, I thought that it did conform to the statute of limitations argument. First of all, counsel talks about damages in connection with 340.6 on your statute of limitations. The Perry Green case states specifically, citing the Jolly for Sea Life case, quote, statute of limitations begins to run when a plaintiff suspects or should suspect that someone has done something wrong to your firm. That's what the statute runs. The reason why the arbitrator's court was a manifest disregard of the law is that she understood that 340.6 said what it said, but failed to apply the facts in this case. The tolling agreement enumerates all of the acts, errors, and omissions that A.D. Martini's contingent clients committed, including in that situation. The cases are overtime, so I'll let you BR 258. I would point the court to our insights that Mr. Martini was required to agree with the partition plan. We believe that the American Postal Workers case applies to both the statute as well as the public policy arguments. And finally, I did have to tell the court that we did have a citation, Terminal 59E. That would be California Civil Code Section 3287, and also the County Saloon vs. Lions Game Corp. AB 126, Caleb 4th, 741, and 7412. Thank you. Those are our questions. Okay, overtime. So you're out of time on your cross-appeal. By the way, we have those issues. I think you answered them adequately. Thank you. Those are your arguments. The cases are going to be submitted for the subpoenas. Thank you. Thank you.
judges: Thomas, Murguia, Baylson